# United States District Court
**NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| v. | § | CRIMINAL ACTION NO. 3:26-CR-0062-S |
| | § | |
| DAMARIAE CORTEZ HORSLEY | § | |

## MEMORANDUM OPINION AND ORDER

This Memorandum Opinion and Order addresses Defendant Damariae Cortez Horsley's Amended Motion to Suppress Evidence ("Motion") [ECF No. 25]. Having reviewed the Motion, the Government's Response to the Motion ("Response") [ECF No. 27], Defendant's Reply to the Response [ECF No. 28], and the applicable law, the Court **GRANTS IN PART** and **DENIES IN PART** the Motion. The Court **GRANTS** the Motion to the extent Defendant seeks to suppress his statements obtained during custodial interrogation without *Miranda* warnings. The Court **DENIES** the Motion to the extent Defendant seeks to suppress the evidence seized from his vehicle on November 16, 2025.

## I. BACKGROUND

On November 16, 2025, Dallas County Sheriff Deputy Oliver[1] conducted a traffic stop on Defendant's vehicle after observing it conduct an "illegal traffic maneuver" and that it had no license plates. Mot. 2; Resp. 1. Defendant pulled over into the High-Occupancy Vehicle ("HOV") lane. Mot. 2. Defendant told Deputy Oliver that he had not insured the vehicle. Resp. 2. Deputy Oliver ran Defendant's information and discovered that Defendant had two outstanding arrest warrants for aggravated assault with a deadly weapon. *Id.* Deputy Oliver called for a tow truck to

[1] Neither party provides Deputy Oliver's first name.

impound Defendant's vehicle. *Id.* at 3; *see id.*, Ex. 3 (showing that the deputies impounded Defendant's vehicle).

Deputy Oliver then placed Defendant under arrest. *Id.*; Mot. 3. He and his partner, Deputy Arreola[2], conducted an inventory search of Defendant's vehicle. Mot. 3-4; Resp. 3-4. During the inventory search, the deputies found spent shell casings, cocaine, and drug paraphernalia. Resp. 4. Deputy Oliver also observed a firearm tucked behind the glovebox. *Id.* Deputy Oliver "unsnap[ped]" the glove compartment and extracted the firearm. *Id.* at 4; Mot. 5.

Before the firearm was found and before Defendant was given *Miranda* warnings, Deputy Arreola asked Defendant, "We are going to ask you about the gun. Where's the gun at?" Mot., Ex. 1 [ECF No. 23-2] 2:46:17-46; Mot. 4-5; Resp. 5. Defendant responded, but what he said is unclear and disputed. Mot., Ex. 1, at 2:46:17-46; *compare* Mot. 5 ("[Defendant] responded, 'Everything is mine. What gun?'"), *with* Resp. 5 ("Defendant then tells [Deputy] Arreola the gun is his, and that everything in the vehicle is his."). As Defendant responded, Deputy Oliver yelled, "I found it!" Mot., Ex. 1, at 2:46:22-30. It is undisputed that only after this exchange, however it was worded, Deputy Oliver gave Defendant his *Miranda* warnings. Resp. 5; Mot. 5.

On February 18, 2026, Defendant was charged with Possession of a Firearm by a Convicted Felon in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(8). Indictment [ECF No. 1]. Defendant moves to suppress the evidence seized from his vehicle on November 16, 2025, and the statements he made before he was given *Miranda* warnings. Mot. 12.

## II. LEGAL STANDARD

The Fourth Amendment to the Constitution of the United States protects an individual's right "against unreasonable searches and seizures." U.S. CONST. amend. IV. "[E]vidence obtained

[2] Neither party provides Deputy Arreola's first name.

in violation of the Fourth Amendment cannot be used in a criminal proceeding against the victim of [an] illegal search and seizure." *United States v. Calandra*, 414 U.S. 338, 347 (1974) (citation omitted). In cases where a search is not conducted pursuant to a warrant, the Government bears the burden of proving that the search was valid. *United States v. Waldrop*, 404 F.3d 365, 368 (5th Cir. 2005) (citation omitted).

The Fifth Amendment protects an individual's right to remain silent during custodial interrogation. *Miranda v. Arizona*, 384 U.S. 436, 460-68 (1966). "Generally, statements obtained during a custodial interrogation without providing adequate warnings under *Miranda* are inadmissible." *United States v. Courtney*, 463 F.3d 333, 336 (5th Cir. 2006) (citing *Missouri v. Seibert*, 542 U.S. 600, 608 (2004)).

## III. ANALYSIS

### *A. Fourth Amendment*

"Warrantless searches and seizures are per se unreasonable unless they fall within a few narrowly defined exceptions." *United States v. Kelly*, 302 F.3d 291, 293 (5th Cir. 2002) (citation and internal quotation marks omitted). Two such exceptions are impoundments under the "community caretaking" exception, *United States v. McKinnon*, 681 F.3d 203, 207 (5th Cir. 2012), and inventory searches, *Colorado v. Bertine*, 479 U.S. 367, 371 (1987).

#### *i. Impoundment*

The Court finds that the impoundment of Defendant's vehicle was conducted pursuant to the community caretaking exception and thus did not violate the Fourth Amendment. In determining whether an impoundment is conducted pursuant to the community caretaking exception, the "analysis hinges upon the reasonableness of the 'community caretaker' impound viewed in the context of the facts and circumstances encountered by the officer." *McKinnon*, 681

F.3d at 208 (citing *Cooper v. California*, 368 U.S. 58, 59 (1987)). In *McKinnon*, the Fifth Circuit found that the decision to impound the defendant's vehicle was reasonable under the Fourth Amendment because the vehicle would have been "left on a public street where it could have become a nuisance," the vehicle "could not lawfully be driven away from the scene" as the driver was uninsured and the vehicle's registration was expired, and towing the vehicle was consistent with towing policy. *Id.* at 209.

Here, Defendant's vehicle was parked in an HOV lane and would have been "left on a public street where it could have become a nuisance." *Id.* It also could not have been lawfully driven away from the scene because it was uninsured and had no license plates. *See id.* ("[T]here is no evidence that [the defendant] had valid insurance coverage for the vehicle that would allow [him] to legally drive the vehicle from the scene."); *see also* TEX. TRANSP. CODE ANN. § 504.943 (West 2021) ("[A] person commits an offense if the person operates . . . a motor vehicle that does not display two license plates."). Further, the deputies were authorized to tow the vehicle under the Standard Operating Procedure of the Dallas County Sheriff's Department ("Standard Operating Procedure"). *See* Mot., Ex. 4 [ECF No. 25-5] 92 (authorizing deputies to tow vehicles when "[t]he operator is not properly insured to operate the vehicle pursuant to Texas law"). Accordingly, the deputies' decision to impound Defendant's vehicle was reasonable under the Fourth Amendment.

*ii. Inventory Search*

The Court finds that the search of Defendant's vehicle was a proper inventory search and thus did not violate the Fourth Amendment. "[A]n inventory search of a seized vehicle is reasonable and not violative of the Fourth Amendment if it is conducted pursuant to standardized regulations and procedures that are consistent with (1) protecting the property of the vehicle's owner, (2) protecting the police against claims or disputes over lost or stolen property, and

(3) protecting the police from danger." *McKinnon*, 681 F.3d at 209 (citation omitted). Defendant does not challenge the validity of the Standard Operating Procedure, which contains the applicable standardized regulations and procedures. However, he contends that the deputies did not follow the Standard Operating Procedure when conducting the inventory search. Mot. 7-11.

The Standard Operating Procedure requires that, if it becomes necessary to impound a vehicle, deputies must conduct "an inventory of the contents of that vehicle" and must record "the results of the inventory . . . on the tow record." Mot., Ex. 4, at 96. Here, the deputies conducted an inventory search after determining that it was necessary to impound Defendant's vehicle, as set forth above. The deputies also recorded the results of the inventory on the tow record. *See* Resp., Ex. 3. Accordingly, the deputies complied with the Standard Operating Procedure in conducting the inventory search.

Defendant argues that the subjective motivations of the deputies rendered the inventory search invalid. Mot. 7-10. However, courts do not inquire into a police officer's subjective motives when determining whether an inventory search is valid under the Fourth Amendment. *See McKinnon*, 681 F.3d at 210 ("[T]he reasonableness inquiry under the Fourth Amendment is an objective one, wholly divorced from the subjective beliefs of police officers." (citation omitted)). Accordingly, the inventory search was constitutional because it was conducted pursuant to the Standard Operating Procedure. *See id.* at 209-10 (holding that an inventory search was constitutional, even if the officer "may have had an ulterior motive to search the vehicle," because it was conducted pursuant to the applicable towing policy).

### *B. Fifth Amendment*

The Court finds that Defendant's post-arrest, pre-*Miranda* statements[3] in response to Deputy Arreola's question about the firearm are inadmissible under the Fifth Amendment. "*Miranda* safeguards come into play whenever a person in custody is subjected to either express questioning or its functional equivalent." *Rhode Island v. Innis*, 446 U.S. 291, 300-01 (1980). It is undisputed that Defendant was under arrest at the time Deputy Arreola questioned him about the firearm. Mot. 3; Resp. 3. Thus, Defendant was in custody. *United States v. Lim*, 897 F.3d 673, 690 (5th Cir. 2018) ("A person is 'in custody' for *Miranda* purposes when placed under formal arrest." (citation and internal quotation marks omitted)).

Further, the Court finds that Deputy Arreola subjected Defendant to express questioning when she asked Defendant where the firearm was. *See id.* at 685-86, 689-90 (finding that an officer questioned the defendant when he asked the defendant if he had any weapons in his house). Contrary to the Government's argument, *see* Resp. 13, the Court finds that Defendant's statements were in direct response to Deputy Arreola's question because he started answering before Deputy Oliver yelled, "I found it!" *See* Mot., Ex. 1, at 2:46:22-30. Finally, it is undisputed that Defendant was not given *Miranda* warnings before Deputy Arreola questioned him about the firearm. Mot. 5; Resp. 5. Accordingly, Defendant's statements in response to Deputy Arreola's question were "obtained during a custodial interrogation without providing adequate warnings under *Miranda*" and are inadmissible. *Courtney*, 463 F.3d at 336 (citation omitted).

---

[3] Defendant only challenges the statements he made after his arrest but before he was given *Miranda* warnings. Mot. 12.

## IV. CONCLUSION

For the foregoing reasons, the Court **GRANTS IN PART** and **DENIES IN PART** the Amended Motion to Suppress Evidence [ECF No. 25]. The Court **GRANTS** the Motion to the extent Defendant seeks to suppress his statements obtained during custodial interrogation without *Miranda* warnings. The Court **DENIES** the Motion to the extent Defendant seeks to suppress the evidence seized from his vehicle on November 16, 2025.

**SO ORDERED.**

SIGNED November 5, 2026.

**KAREN GREN SCHOLER**
**UNITED STATES DISTRICT JUDGE**